JUSTIN A. BRACKETT (HI Bar No. 9954)
1888 Kalakaua Avenue, Suite C-312
Honolulu, HI  96815
Telephone: (808) 377-6778
Email:  justinbrackettlaw@gmail.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ERIC STODDARD,<br><br>                    Plaintiff,<br><br>     vs.<br><br>ENCORE CAPITAL GROUP, INC.,<br>MIDLAND FUNDING, LLC,<br>MIDLAND CREDIT MANAGEMENT,<br>INC., THE LAW OFFICE OF<br>MARVIN S.C. DANG, LLLC and<br>EMILY PERSONS,<br><br>                    Defendants. | CASE NO. 1:16-CV-27<br><br>COMPLAINT FOR DAMAGES<br>DECLARATORY AND INJUNCTIVE<br>RELIEF, EXHIBITS 1 THROUGH 5,<br>and VERIFICATION<br><br>JURY TRIAL REQUESTED |

## COMPLAINT

## <u>INTRODUCTION</u>

1.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 pursuant to 15

U.S.C. § 1692k(d) as well as 28 U.S.C. § 1367 (supplemental jurisdiction).

2.      This action arises out of Defendants' violations of the Fair Debt

Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*. ("FDCPA"), in their illegal

efforts to collect a consumer debt. This is also an action for damages against the Defendants for unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Sections 443B-18, 19, and 20 of the Hawaii Revised Statutes.

3.     Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4.     Plaintiff Eric Stoddard (hereinafter "Plaintiff" and/or "Mr. Stoddard") is a natural person who resides in Honolulu County, Hawai'i, and a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and a "Debtor" as that term is defined by Haw. Rev. Stat. § 443B-1.

5.     Defendant Encore Capital Group, Inc. (hereinafter "Defendant Encore") is a "debt collector" as defined by 15 U.S.C. § 1692a(6), and a for-profit corporation organized in Delaware, and maintains Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808, as its registered agent for service of process.

6.     Defendant Midland Funding, LLC (hereinafter "Defendant Midland Funding") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and a for-profit limited liability company organized in Delaware that is a wholly owned subsidiary of Defendant Encore, and that maintains CSC Services of Hawaii, Inc.,

1600 Pauahi Tower, 1003 Bishop Street, Honolulu, HI  96813, as its registered agent for service of process.

7.     Defendant Midland Credit Management, Inc. (hereinafter "Defendant Midland" or "Midland") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), a for-profit corporation organized in Kansas that is a wholly owned subsidiary of Defendant Encore, and maintains Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE  19808, as its registered agent for service of process.

8.     Defendant The Law Office of Marvin S.C. Dang, LLLC (hereinafter "Defendant Dang" or "Dang") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), a for-profit corporation organized in Hawaii that maintains Marvin S.C. Dang, 239 Merchant Street, Suite 100, Honolulu, HI  96813, as its registered agent for service of process.

9.     Defendant Emily Persons (hereinafter "Defendant Persons" or "Persons") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and an employee or agent of Defendant Midland.  She can be served through Defendant Midland at Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE  19808, as its registered agent for service of process.

10.     Other defendants may be discovered in the course of litigation, and Plaintiff respectfully prays that the Court will permit the addition of later

discovered parties upon motion.

## FACTUAL ALLEGATIONS

11.    Defendants have alleged that Mr. Stoddard incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and this debt is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).  More specifically, this debt is a credit card debt originally owed to, or serviced by, Chase Bank USA, N.A.

12.    The primary purpose of all Defendants' businesses is the collection of debts.

13.    Defendant Midland Funding is engaged in the business of purchasing defaulted consumer debts and attempting to collect them by credit reporting and collection lawsuits.

14.    Defendant Midland is regularly engaged in the collection of consumer debts owed or due or asserted to be owed or due another, and attempts to collect them from consumers by making telephone calls and sending collection letters.

15.    Defendant Midland is regularly engaged in the collection of consumer debts owed or due or asserted to be owed or due another, and attempts to collect them from consumers by making telephone calls and sending collection letters.

16.    Defendants Encore, Midland Funding, and Midland cannot legally

conduct any business, including the collection of debts, in the State of Hawaii because they have not acquired a Hawaii General Excise Tax license.

17.    Defendants Encore, Midland Funding, and Midland do not have a Hawaii General Excise Tax license.

18.    Defendant Midland actively collects debts in the State of Hawaii by sending letters and making telephone calls to Hawaii residents.

### *Reporting of the Debt on Mr. Stoddard's Credit Report*

19.    Defendant Midland Funding has been reporting information about the debt to Experian.  (See attached Exhibit 1).

20.    Defendant Midland Funding reported that Mr. Stoddard owed $11,939 as of May 2014 on the Chase Bank USA, N.A. account designated as account number 854060…. (Exhibit 1)   This is the same account number Defendant Midland assigned to the debt. (Exhibit 3, p. 3)

21.    Defendant Midland Funding reported the debt had an original balance of $9,255.00. (Exhibit 1)

22.    Defendant Midland Funding then reported the balance of the debt increased to $10,218 in July 2012, $10,289 in August 2012, $10,378 in September 2012, $10,449 in October 2012, $10,609 in December 2012, $10,679 in January 2013, $10,768 in February 2013, $10,839 in March 2013, $10,928 in April 2013, $10,999 in May 2013, $11,088 in June 2013, $11,176 in July 2013, $11,229 in

August 2013, $11,318 in September 2013, $11,389 in October 2013, $11,531 in November 2013, $11,602 in January 2014, $11,708 in February 2014, $11,779 in March 2014, $11,868 in May 2014, and then $11,939 also for May 2014. (Exhibit 1)  These are artificially inflated amounts demonstrating Defendants' addition of interest and fees to the account. Mr. Stoddard never owed any of these amounts.

23.    Defendant Midland Funding's credit reporting shows that it has been adding interest to this account that was never owed by Mr. Stoddard.

24.    Defendant Midland Funding's credit reporting also demonstrates that it has been increasing its demands by odd and varying rates of interest. (Exhibit 1)

### *February 2, 2015 Collection Letter from Defendant Dang*

25.    On or about February 2, 2015 Mr. Stoddard received a collection letter from Defendant Dang. (See attached Exhibit 2).

26.    The February 2, 2015 collection letter identified Defendant MIDLAND FUNDING, LLC as the "Current Creditor to whom debt is owed" and last four digits of the account number were listed as 3166. (Exhibit 2)

27.    In the February 2, 2015 collection letter Defendant Dang also stated that the Original Creditor is Chase Bank USA, N.A. (Exhibit 2)

28.    The February 2, 2015 collection letter asserted that the "Amount due as of 02/02/15" was $9,255.16, (See Exhibit 2)  This is the same amount Defendant Midland Funding was reporting to Experian as the original amount owed on the

account.

29.    The February 2, 2015 collection letter asserted: "We have been retained by the above Current Creditor in connection with your above account." (Exhibit 2)

30.    The February 2, 2015 collection letter directed Mr. Stoddard to "Please send a money order or check made payable to 'Marvin Dang – Client Trust Account'…." (Exhibit 2)

31.    No supporting documents were attached to the February 2, 2015 collection letter.

### *Use of False, Deceptive and Misleading Civil Complaint to Collect a Debt*

32.    On or about March 11, 2015, a state court collection lawsuit, which included a Civil Complaint and sworn Affidavit, was caused by Defendants to be filed and served upon Plaintiff in the District Court for the First Circuit, Honolulu Division, State of Hawai'i. A copy of the state court collection lawsuit is filed as collective Exhibit 3 to this Complaint.

33.    The Civil Complaint filed in Hawai'i District Court as Civil Case # 1RC15-1-1754 was a "communication" as defined by 15 U.S.C. § 1692a(2) in connection with collection of the debt and in an attempt to collect the debt. (see Exhibit 3)

34.    The statute of limitations for the filing of a lawsuit in an attempt to

collect the alleged debt, a consumer credit card bill, expired no later than February 15, 2014.  See Haw. Rev. Stat. §657-1.

35.    Defendant Dang filed the lawsuit in an attempt to collect the alleged debt on March 11, 2015.

36.    No records of the underlying account were held by Defendant Dang at the time of the filing of the Civil Complaint.

37.    Instead, Defendant Dang blindly asserted in the Complaint that "On or about February 10, 2015, [Mr. Stoddard] owed money to [Defendant Midland Funding] as follows: SEE ATTACHED." (Exhibit 3, underline in original)

38.    The only document attached was an affidavit signed by a Midland representative. (Exhibit 3)

39.    Defendant Dang goes on to demand:  [Defendant Midland Funding] asks for Judgment in the principal amount of $9,255.16.  In addition, the Court may award court costs, interest and reasonable attorney's fees." (Exhibit 3, underline in original).  Just like Exhibit 2, this is the same amount Defendant Midland Funding was reporting to Experian as the original amount owed on the account.

40.    If Defendant Dang had reviewed the records of the original creditor prior to filing the lawsuit against Mr. Stoddard, he would have seen that Mr. Stoddard's last payment was made on January 15, 2008 in the amount of $100.00.

(Exhibit 4, p. 11)

41.     If Defendant Dang had reviewed the records of the original creditor prior to filing the lawsuit against Mr. Stoddard, he would have seen that Mr. Stoddard never owed the amount of $9,255.16. (Exhibit 4)

42.     The balance on January 15, 2008, as well as the balance at the time of charge-off, was not $9,255.16. (Exhibit 4)

43.     Defendants Encore, Midland, and Midland Funding knew, or should have known, that the statute of limitations for collection of the alleged debt had ran when they forwarded the account to Defendant Dang for the filing of a lawsuit against Mr. Stoddard.

44.     Mr. Stoddard personally appeared in Honolulu District Court to dispute the debt on April 20, 2015, May 26, 2015, and August 17, 2015. (See attached Exhibit 5).

45.     Mr. Stoddard disputed the debt and requested the underlying documents at all of the hearings, but Defendant Midland Funding never provided the requisite supporting documents in response to Mr. Stoddard's disputes.

46.     Mr. Stoddard tried to explain to Defendant Dang that the statute of limitations had ran on this account at the hearings and via dispute letters, but Defendant Dang continued in its collection efforts.

47.     Mr. Stoddard, having attended three hearings already, felt as though

he had no choice but to hire counsel to defend case number 1RC15-1-1754 in Hawaii District Court.  He incurred attorney fees to defend against Defendants' allegations.

48.    Mr. Stoddard's counsel appeared at a hearing on January 19, 2016 and again explained that the statute of limitations had ran.  Yet again Defendant Dang blindly asserted that there was a payment on March 30, 2010 and continued in its collection efforts.

49.    Mr. Stoddard's counsel served discovery requests upon Defendants and in response to these requests they produced no documents to support their claim of a payment being made in 2010.  To the contrary, their documents again supported the fact that the last payment made on the account was on January 15, 2008.

50.    Despite the assertions that the statute of limitations had ran, Defendant Dang never reviewed the documents relating to the account's history and instead moved forward with seeking a judgment against Mr. Stoddard.

51.    Defendants had knowledge of the date when the alleged debts went into default, and in spite of the statute of limitations having ran, they intentionally moved forward with collection efforts and took the requisite steps to file a lawsuit and pursue a judgment against Mr. Stoddard in effort to collect the alleged debt. (Exhibit 5).

### *Use of False, Deceptive and Misleading Affidavit to Collect Debt*

52.     The Affidavit of Emily Persons was a "communication" as defined by 15 U.S.C. § 1692a(2) in connection with collection of the debt.  (See attached Exhibit 3, p. 3).

53.     An affidavit filed in support of a civil complaint on a sworn account is filed to attest to the correctness of the amount allegedly owed on the account and the overall validity of the account.

54.     The Affidavit filed in the state court collection lawsuit in connection with the collection of the debt and in an attempt to collect the debt was signed under penalty of perjury by Emily Persons.

55.     Ms. Persons acknowledges the lawsuit is over the Chase Bank account ending in 3166 and Defendant Midland account numbered 8540604962. (Exhibit 3, p. 3).

56.      Ms. Persons asserts under oath:  "I …make the statements herein based upon personal knowledge of those account records maintained on [Defendant Midland Funding]'s behalf."  (Exhibit 3, p. 3).

57.     Ms. Persons goes on to explain:  "I have access to and have reviewed the records pertaining to the account…." (Exhibit 3, p. 3).

58.     Further, Ms. Persons asserts: "[Defendant Midland]'s records show that [Mr. Stoddard] owed a balance of $9,255.16 as of 2015-02-10." (Exhibit 3, p.

3).

59.     There were no supporting documents from Chase Bank attached to the Civil Warrant or Affidavit.

60.     Upon information and belief, Ms. Persons did not review any of the records of the originator of the debt prior to signing the Affidavit.

61.     The only records held by Defendants at the time Ms. Persons signed the Affidavit were computer records that contained very limited information about Mr. Stoddard's debt.

62.     Without any records of the originator of the debt available for her review to determine if there was a contract signed by Mr. Stoddard and, if so, whether the amount of the debt as to principal, interest, late fees or other fees alleged in the Affidavit were correct, as required by Hawai'i state law for a sworn account, it was impossible for Defendant Persons to truthfully make a sworn affidavit as to the correctness of the amount owed, if any.

63.     Without any records of the originator of the debt available for her review, Defendant Persons was unable to determine when the last payment was made on the account and therefore, when the statute of limitations had ran.

64.     Defendants filed the state court collection lawsuit against Plaintiff in an attempt to collect the debt by intentionally using a false, deceptive, and misleading Affidavit as the only evidentiary basis to support their claims.

65.     Defendants intentionally use virtually identical form affidavits in these lawsuits, alleging facts that are not in possession of Defendants and to which its officers, employees and/or agents are not qualified to sign under oath due to their lack of proper information.

66.     Defendants engage in a pattern and practice of filing state court collection lawsuits against consumers while knowingly using false, deceptive, and misleading affidavits signed by persons without the information or ability to make a sworn affidavit as to the correctness of the amount owed, as required under Hawai'i state law for sworn accounts.

### *January 7, 2016 Collection Letter from Defendant Dang*

67.     Mr. Stoddard received another collection letter from Defendant Dang dated January 7, 2016. (See attached Exhibit 4).

68.     The January 7, 2016 collection letter identified Chase Bank USA, N.A. as the "Original Creditor" and identified the last four digits of the account number as 3166. (Exhibit 4).

69.     The January 7, 2016 collection letter demanded the "Amount" of $9,255.16 on the account.  (Exhibit 4).

70.     The January 7, 2016 collection letter claims to include the "chain of title documents, cardmember agreement and billing statements for the subject matter." Instead, the letter only included a few statements and a portion of a

cardmember agreement and some unrelated sale of account documents. (Exhibit 4).

71.     The Bill of Sale and Affidavit of Sale attached to the January 7, 2016 collection letter does not identify Mr. Stoddard or his account number. (Exhibit 4, p. 2-3).   Upon information and belief, these documents do not pertain to Mr. Stoddard's account.

72.     The cardmember agreement attached to the January 7, 2016 collection letter does not identify Mr. Stoddard or his account number. (Exhibit 4, p. 4-5). Upon information and belief, this is not the cardmember agreement applicable to Mr. Stoddard's account.

73.     According to the Chase Bank statements attached to the January 7, 2016 collection letter, the last payment made on this account was on January 15, 2008. (Exhibit 4, p.11)

74.     Defendants were attempting to keep Mr. Stoddard confused as to when he made his last payment so that they could keep collecting from him indefinitely, even after the debt was no longer legally owed by him. (Exhibit 4)

75.     The January 7, 2016 collection letter is signed by an attorney who works for Defendant Dang. (Exhibit 4)

## CAUSES OF ACTION

### *COUNT ONE: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT*

### FIRST VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT: FALSE OR MISLEADING REPRESENTATIONS

76. The acts of Defendants constitute violations of the Fair Debt Collection Practices Act. Defendants' violations of the FDCPA include, but are not limited to, the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt, which is a violation of 15 U.S.C. § 1692e.

77. Defendants filed the state court collection lawsuit against Plaintiff in an attempt to collect the debt by intentionally using false, deceptive, and misleading actions and providing no evidentiary basis to support their claims.

78. By filing the state court collection lawsuit against Mr. Stoddard in an attempt to collect the debt while alleging facts which they could not support with any documentation in their possession, Defendants used false, deceptive, and misleading representations or means in connection with the collection of the debt that would create a false impression in the mind of the least sophisticated consumer that Defendants had the legal right to attempt to collect the debt in the manner in which they were attempting to collect it. This conduct is in violation of 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

79.    Defendants threatened to take, and actually did take, an action that cannot legally be taken against Mr. Stoddard:  they filed a lawsuit against him after the statute of limitations had ran.  Such conduct is the use of a false, misleading, and deceptive representation or means to collect, or attempt to collect, a debt, and is a violation of 15 U.S.C. §§ 1692e and 1692e(10).

80.    By filing the lawsuit on a time-barred debt, without having first determined after a reasonable inquiry that the limitations period had not expired, Defendants violated 15 U.S.C. §§ 1692e and 1692f.

81.    By intentionally filing the state court collection lawsuit against Mr. Stoddard in an attempt to collect an alleged debt while using the false, deceptive, and misleading Affidavit of Ms. Persons, which alleged facts not in her possession at the time of her signing it, Defendants violated 15 U.S.C. § 1692e(5).

82.    The attestations made by Ms. Persons in the Affidavit regarding the debt which include, but are not limited to, the amount of the debt owed by Mr. Stoddard, were false, deceptive, and misleading representations made without the information or ability to make a sworn affidavit as to the correctness of the amount owed, if any, and thus are in violation of 15 U.S.C. § 1692e(2)(A); and the false representation of the character, amount, or legal status of the debt is the use of a false, deceptive, and misleading representation or means in connection with collection of the debt in violation of 15 U.S.C. §§ 1692e and 1692e(10), and is an unfair means to

collect or attempt to collect the debt in violation of 15 U.S.C. § 1692f.

83.    These communications by Defendants were collection communications in violation of numerous and multiple provisions of the FDCPA including, but not limited to, 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692(e)(5), 1692e(10), and 1692(f), amongst others.

84.    A calculation of the amounts reported to Experian shows that Defendant Midland Funding was applying varying and unknown rates of interest to the debt.  This makes the balance increase at rates that do not comply with the terms of the initial contract.

85.    Defendants demand $9,255.16.  This amount was never demanded by Chase, and Defendants admit in their discovery responses that neither Defendant Midland Funding, nor Defendant Dang, have ever received a payment on the debt.

86.    By consistently demanding a wholly separate amount than what was owed to Chase, Defendants have made false, deceptive, and misleading representations throughout the course of their collection efforts.

87.    By assigning inaccurate account balances to the underlying account, Defendants have misled Mr. Stoddard as to what amount of money he owes on this account.

88.    By assigning different account balances and interest rates to the same account, none of which comply with the applicable contract rate of interest,

Defendants have misled Mr. Stoddard as to what amount of money he owes on this account.

89.     The letters and credit reporting by Defendants demand very odd amounts from Mr. Stoddard and he is confused as to how Defendants calculated said amounts and what authority they have to demand these odd amounts.

### SECOND VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT: FALSE OR MISLEADING REPRESENTATIONS

90.     Defendants' violations of the FDCPA also include, but are not limited to, the use of false, deceptive, or misleading representations in connection with the character, amount, or legal status of the alleged debt, which is a violation of 15 U.S.C. §1692e(2).

91.     Mr. Stoddard disputed the debt and explained to Defendants that the statute of limitations had ran, but in spite of these disputes, Defendants have never provided any evidence of a payment being made within the statute of limitations period.

92.     By demanding incorrect amounts and amounts that were no longer owed, Defendants misled Mr. Stoddard as to what amount of money he owes on this account.

93.     By assigning illegitimate credits to the account to keep collecting it past the statute of limitations, Defendants have made a false representation or

implication of the character, extent, or amount of money Mr. Stoddard owes.

94.     Mr. Stoddard asserts that the demands by Defendants without any review of the underlying account records, demonstrates that they have no intention of determining the correct amount owed, if any.   Further, Defendants are attempting to keep him confused as to the amount owed so that if he were to make payments on this account he would never know the actual amount owed, and instead would keep paying indefinitely, even though he no longer legally owed the debt.

95.     By assigning illegitimate "credits" to the underlying account, Defendants have confused Mr. Stoddard as to what amount of money he owes on this account.

96.     The statement by the Defendants in the civil complaint that Mr. Stoddard owed $9,255.16 together with an undisclosed amount of interest, court costs and attorney's fees falsely represents the actual amount owed, and is confusing and misleading to the least sophisticated consumer as to the amount of debt owed, and is thus a violation of 15 U.S.C. § 1692e(2)(A.

97.     The Defendants' false representations of the character, amount, or legal status of the debt are a use of a false, deceptive, and misleading representations or means in connection with collection of the debt or in an attempt to collect the debt, which is a violation of 15 U.S.C. §§ 1692e and 1692e(10), and are an unfair means to

collect or attempt to collect the alleged debt in violation of 15 U.S.C. § 1692f.

98.    A calculation of the time passed and the amounts demanded demonstrates that Defendants added interest at varying rates, rates which were not in compliance with the original contract.

### THIRD VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT: UNFAIR PRACTICES

99.    Defendants' violations of the FDCPA also include, but are not limited to, the collection of any amount that is not expressly authorized by the agreement creating the debt or permitted by law, which is a violation of 15 U.S.C. §1692f(1).

100.   The amounts sought by Defendants in their communications include interest and/or various fees not expressly authorized by the agreement creating the debt or permitted by law, and thus were in direct violation of 15 U.S.C. § 1692f(1).

101.   The civil complaint filed by Defendants asserts that Mr. Stoddard owes Defendants $9,255.16 in spite of the fact that this amount was never demanded by, or owed to, Chase and the applicable statute of limitations had ran on the account.  This demand by Defendants was not permitted by law.

102.   Defendant Midland Funding demanded incorrect amounts, amounts that were never allowed pursuant to his contract with Chase Bank.  Defendants even reported those amounts on Mr. Stoddard's credit reports.  Thus the demands from Defendants are not expressly authorized by the agreement creating the debt or

permitted by law.

103.   On September 9, 2015 Defendants entered into a Consent Order with the U.S. Consumer Financial Protection Bureau, partially because of their tactics in collecting debts that were past the statute of limitations.   See September 9, 2015 Consent Order, 2015-CFPB-0022.   They are once again engaging in this illegal conduct in this matter.

104.   A calculation of the time passed and the amounts demanded demonstrates that Defendants added interest at varying rates, rates that were not in compliance with the original contract.

### COUNT TWO: VIOLATIONS OF THE HAWAI'I REVISED STATUTES, UNFAIR OR DECEPTIVE ACTS OR PRACTICES

### FIRST VIOLATION OF THE HAWAI'I REVISED STATUTES: FALSE OR MISLEADING REPRESENTATIONS

105.   The acts of Defendants constitute violations of the Hawai'i Revised Statutes.   Violations include, but are not limited to, any false representation or implication of the character, extent, or amount of a claim against a debtor or alleged debtor, or of its status in any legal proceeding.   Such conduct is a violation of Haw. Rev. Stat. § 443B-18(5).

106.   The underlying debt is disputed.

107.   The communications from Defendants demand amounts from Mr. Stoddard that he no longer owed as well as amounts that were never due.

108.   By demanding amounts they were never entitled to, Defendants have made a false representation of the character and amount of money Mr. Stoddard owes on this account.

109.   By assigning illegitimate credits to the account to keep collecting it past the statute of limitations, Defendants have made a false representation of the character, extent, or amount of money Mr. Stoddard owes.

110.   By attempting to collect unknown and unauthorized amounts through false and deceptive communications, Defendants have deceived and/or misled Mr. Stoddard as to what amount of money he owes on this account.

## SECOND VIOLATION OF THE HAWAI'I REVISED STATUTES: FALSE OR MISLEADING REPRESENTATIONS

111.   Any representation that an existing obligation of the debtor or alleged debtor may be increased by the addition of attorney's fees, investigation fees, service fees, and any other fees or charges when in fact the fees or charges may not legally be added to the existing obligations is a violation of Haw. Rev. Stat. § 443B-18(8).

112.   Upon information and belief, Mr. Stoddard asserts that Defendants did not have authority to collect the debt after the statute of limitations had ran (see the full explanation above).

113.   By demanding artificially inflated amounts, amounts that were no longer collectible, and even filing a lawsuit against Mr. Stoddard in effort to collect

the debt, Defendants have demanded amounts that are not expressly authorized by the agreement creating the debt or permitted by law and have violated H.R.S. §443B-18(8).

## THIRD VIOLATION OF THE HAWAI'I REVISED STATUTES:
## COLLECTION OF AN UNLAWFUL AMOUNT OF ATTORNEY FEES

114. Pursuant to H.R.S. §443B-9, "A collection agency shall not collect, or attempt to collect, any collection fee or attorney's fee or commission from any debtor; provided that an attorney's fee or commission may be collected after filing of a suit against any debtor and the fee or commission shall not be in excess of twenty-five per cent of the unpaid principal balance."

115. The debt was no longer collectible and had a legal balance of $0.00 since the statute of limitations had ran, thus Defendants' seeking of attorney fees in any amount was in excess of twenty-five per cent of the unpaid principal balance.

116. Defendants sought attorney fees in their collection lawsuit.

117. As a result of Defendants' actions, Mr. Stoddard is entitled to an award of actual damages, statutory damages, as well as an award of costs and attorney fees.

### *Respondeat Superior Liability*

118. In addition to their individual liability under the FDCPA, the acts and omissions of Defendants Midland, Midland Funding, Dang, Persons, and any other debt collectors hired as agents by and for Defendant Encore, and who communicated

with Plaintiff as further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant Encore.

119.   The acts and omissions by Defendants Midland, Midland Funding, Dang, Persons, and any other debt collectors hired as agents by and for Defendant Encore, were incidental to, or of the same general nature as, the responsibilities they were authorized to perform by Defendant Encore in collecting consumer debts.

120.   By committing these acts and omissions against Plaintiff, Defendants Midland, Midland Funding, Dang, Persons, and any other debt collectors hired as agents by and for Defendant Encore, were motivated to benefit their principal, Defendant Encore.

121.   Defendant Encore is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal and state law by the debt collectors employed as agents of Defendant Encore, including, but not limited to violations of the FDCPA, the Hawai'i Revised Statutes, and any other federal or state consumer protection statutes in their illegal attempts to collect the debt from Plaintiff.

## **TRIAL BY JURY**

122.   Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7.  Fed.R.Civ.P. 38.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against

Defendants and in favor of the Plaintiff as follows:

a)      Declaratory judgment that Defendants violated Mr. Stoddard's rights

under the Fair Debt Collection Practices Act;

b)      Declaratory judgment that Defendants violated Mr. Stoddard's rights

under the Hawai'i Revised Statutes;

c)      That Plaintiff be awarded actual damages pursuant to 15 U.S.C. §

1692k(a)(1) against each and every defendant in an amount to be

determined by a jury at trial;

d)      That Plaintiff be awarded statutory damages of $1,000.00 pursuant to

15 U.S.C. §1692k(a)(2);

e)      That Plaintiff be awarded the costs of litigation, including a

reasonable attorney fee, pursuant to 15 U.S.C. §1692k(a)(3);

f)      That Plaintiff be awarded actual damages pursuant to Haw. Rev. Stat.

§ 480-13 in an amount to be determined by a jury at trial;

g)      That Plaintiff be awarded statutory damages of not less than $1,000.00

pursuant to Haw. Rev. Stat. § 480-13;

h)      That Plaintiff be awarded the costs of litigation including a reasonable

attorney fee pursuant to Haw. Rev. Stat. § 480-13;

i)      That the Court declare all defenses raised by Defendants to be insufficient; and

j)      Such other and further relief, including injunctive relief as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable.

Respectfully submitted this the 29th day of January, 2016.

*/s/ Justin A. Brackett*
Justin A. Brackett, #9954
Attorney for Plaintiff
1888 Kalakaua Avenue, Suite C-312
Honolulu, TN 96815
(808) 377-6778
justinbrackettlaw@gmail.com